UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIA FERMIN-CASTILLO o/b/o B.J.F., : : : Plaintiff, : : v. : : KILOLO KIJAKAZI, : Commissioner of Social Security,[1] : | CIVIL ACTION No. 21-cv-01495-RAL |

**RICHARD A. LLORET**  **May 31, 2022**
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Julia Fermin-Castillo, on behalf of her minor son, B.J.F., seeks review of the denial of B.J.F.'s claim for Social Security Supplemental Security Income ("SSI"). Ms. Fermin-Castillo argues that the Administrative Law Judge ("ALJ") failed to consider material contradictory evidence in determining whether B.J.F.'s severe impairments medically or functionally equaled the severity of a listing condition. The Commissioner responds that the ALJ appropriately considered all evidence to the extent required under the regulations. After reviewing the record, I find the ALJ did not appropriately consider material evidence which contradicts his conclusions concerning whether B.J.F.'s impairments functionally equal the severity of a listing condition. I also find that the ALJ's determination that B.J.F.'s impairments do not medically equal the severity of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

a listing condition is not supported by substantial evidence. I will remand this decision to the Commissioner for reconsideration.

## PROCEDURAL HISTORY

On January 10, 2019, Ms. Fermin-Castillo filed a claim on behalf of B.J.F. for SSI, alleging a disability beginning on November 29, 2011. Administrative Record ("R.") 21. The claim was initially denied on March 8, 2019. R. 21, 70.

On April 17, 2019, Ms. Fermin-Castillo requested an administrative hearing before an ALJ. R. 76. The ALJ held the hearing on November 6, 2019 and issued a decision denying the claim on December 3, 2019. R. 18, 28. On February 24, 2020, Ms. Fermin-Castillo appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council. R. 16. The Appeals Council denied Ms. Fermin-Castillo's request for review on October 6, 2020. R. 10. On March 29, 2021, Ms. Fermin-Castillo filed this appeal in federal court. Doc. No. 1.

The parties consented to the jurisdiction of a U.S. Magistrate Judge (Doc. No. 3) and have briefed the appeal. Doc. No. 12 ("Pl. Br."), 13 ("Comm'r Br."), and 14 ("Pl. Reply").

## FACTUAL BACKGROUND

### A. The Claimant's Background

B.J.F. was a school-age child on his SSI application date and at the time of his hearing. R. 22; 20 C.F.R. § 416.926a(g)(2). On January 10, 2019, Ms. Fermin-Castillo applied for SSI on behalf of B.J.F., alleging disability based on attention deficit hyperactivity disorder ("ADHD") and autistic spectrum disorder. R. 21, 192.

**B. The ALJ's Decision**

On December 3, 2019, the ALJ issued a decision finding that B.J.F. was not eligible for SSI because he has not been under a disability, as defined by the Social Security Act. R. 18, 28. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's three-step sequential evaluation to determine whether an individual under the age of 18 is disabled.[2]

At step one, the ALJ found that B.J.F. has not been engaged in substantial gainful activity since his application date of January 10, 2019. R. 22. At step two, the ALJ found that B.J.F. has the severe impairments of autism spectrum disorder and ADHD. *Id*.

At step three, the ALJ compared B.J.F.'s impediments to those contained in the Social Security Listing of Impairments ("listing").[3] The ALJ found that B.J.F. did not have a condition that meets or medically equals the severity of one of the listed impairments. R. 22–23.[4] The ALJ concluded that "[B.J.F.'s] limitations in understanding, remembering, and applying information[;] interacting with others[;] and concentrating, persisting, or maintaining pace are less than marked[;] and [his] limitations in adapting or [managing] himself are less than extreme." R. 23.

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. When the claimant is under the age of eighteen, the ALJ must assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; and (3) has an impairment or combination of impairments that meet, medically equal, or functionally equal the criteria listed in the Social Security regulations mandating a finding of disability. *See* 20 C.F.R. § 416.924(a)–(d).

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a minor's severe impairment or combination of impairments meet, medically equal, or functionally equal the criteria of a listing, that minor is determined to be disabled. 20 C.F.R. § 416.924(d).

[4] To meet or medically equal listings 112.10 (autism spectrum disorder) or 112.11 (neurodevelopmental disorders), the claimant must show that he has marked limitations in two areas of mental functioning or an extreme limitation in one area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 112.10–112.11. The four domains are (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id*. § 12.00(E)(1)–(4).

The ALJ then turned to the question of whether B.J.F.'s impairment can be found to be "functionally equivalent" to a listed impairment because it caused "marked limitations in two domains of functioning or an extreme limitation in one domain." R. 23; 20 C.F.R. §§ 416.924(d), 416.926a.[5] In the domain of attending and completing tasks, the ALJ found that B.J.F. has less than a marked limitation. R. 26–27. Similarly, the ALJ found that B.J.F.'s limitation in interacting and related with others is less than marked. R. 27–28. The ALJ did find that B.J.F. has a marked limitation in the ability to care for himself. R. 25–26. However, in the domains of acquiring and using information, moving about and manipulating objects, and health and physical well-being, the ALJ found no limitations. R. 28.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential; I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing

---

[5] A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one which "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).

The functional domains which an ALJ must consider include (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. R. 23; 20 C.F.R. § 416.926a.

4

court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). I must also determine whether the ALJ properly applied Social Security Rulings, as they are binding on the agency. *See Allen v. Barnhart*, 417 F.3d 396, 403 (3d Cir. 2005) (citing *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001)). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence [he] rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

While it is error for an ALJ to fail "to consider and explain [his] reasons for discounting all of the pertinent evidence before [him]," *Burnett*, 220 F.3d at 121, an ALJ's decision is to be "read as a whole," *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379–80 (3d Cir. 2004) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett,*" and a finding that the "ALJ's conclusions [were] . . . supported by substantial evidence."). The reviewing court, by reading the ALJ's opinion as a whole against the record, should be able to understand why the ALJ came to his decision and identify substantial evidence in the record supporting the decision. *See Burnett*, 220 F.3d at 119–20; *Caruso*, 99 F. App'x at 379.

## DISCUSSION

Ms. Fermin-Castillo argues that the ALJ committed error in finding that B.J.F. has less-than-marked limitations in his ability to interact and relate with others and attend and complete tasks, despite compelling evidence to the contrary. Doc. No. 12, at 9–16. Ms. Fermin-Castillo also asserts that the ALJ committed error in finding that

B.J.F. has a less-than-extreme limitation in his ability to adapt and manage himself, and thus does not suffer an impairment which medically equaled a listing condition. *Id*. at 16–20. Next, Ms. Fermin-Castillo argues that the Commissioner's decision in her case is constitutionally defective and merits reversal because Commissioner Andrew Saul, who oversaw the agency when the ALJ entered her final decision, was protected by an unconstitutional removal statute and served a longer term than the president, in violation of separation of powers principles. *Id*. at 20–22. Finally, Ms. Fermin-Castillo argues that I should award benefits if I find that B.J.F. is disabled under the Act. *Id*. at 22–23.

The Commissioner responds that irrespective of the merits of Ms. Fermin-Castillo's separation of powers argument, no alleged constitutional defect here entitles her to a rehearing of B.J.F.'s disability claim. Doc. No. 13, at 3–16. Furthermore, the Commissioner asserts that substantial evidence supports the ALJ's findings. *Id*. at 16–23. Next, the Commissioner asserts that Ms. Fermin-Castillo has alleged no other valid legal deficiencies in the ALJ's decision, as the ALJ did not need to consider evidence predating the SSI application date, nor did he need to provide detail on his consideration of every piece of evidence. *Id*. at 23–26. Finally, the Commissioner argues that the decision should be remanded for reconsideration should I find the decision unsupported by substantial evidence. *Id*. at 26 n.11.

In reply, Ms. Fermin-Castillo contends that the ALJ and Commissioner disregarded relevant regulations guiding the review of evidence predating an SSI application date. Doc. No. 14, at 1–2. Ms. Fermin-Castillo also asserts that the ALJ disregarded material contradictory evidence in evaluating B.J.F.'s case. *Id*. at 2–3. Finally, Ms. Fermin-Castillo asserts that B.J.F. was indeed harmed by the separation of

7

powers violation concerning Commissioner Saul's removability, as the claim was denied under his authority and he served pursuant to an unlawful delegation of power, and the other constitutional defenses raised by the Commissioner do not carry weight here. *Id.* at 5–13.

After carefully reviewing the record, I find that the ALJ committed reversible error by failing to resolve contradictory material evidence when evaluating whether B.J.F.'s impairments functionally equal a listing condition. I also find that the ALJ's determination as to whether B.J.F.'s impairments medically equal the severity of a listing condition is not supported by substantial evidence. I will remand the case to the Commissioner for further review consistent with this opinion. Since I am remanding this claim on the substance of the ALJ's decision, I will not reach the constitutional issues raised by the parties.[6]

### A. The ALJ erred by not resolving contradictory material evidence when evaluating whether B.J.F.'s impairments functionally equal the severity of a listing condition.

In determining whether B.J.F.'s impairments functionally equal the severity of a listing, the ALJ concluded that B.J.F. has less-than-marked limitations in his ability to interact and relate with others and attend and complete tasks. R. 26–28. After carefully reviewing his decision and B.J.F.'s record, though, I find that the ALJ failed to resolve material contradictory evidence when evaluating both areas of functioning. This warrants a remand.

---

[6] The judges in this district who have addressed similar questions have found that injuries caused by the decisions of ALJs serving under Social Security Commissioners who are protected by unconstitutional removal clauses cannot be traced to the constitutional defect in the Social Security Act. *See Adams v. Kijakazi*, No. 20-3591, 2022 WL 767806, at *9–11 (E.D. Pa. Mar. 14, 2022) (Hey, MJ.); *Burrell v. Kijakazi*, No. CV 21-3662, 2022 WL 742841, at *5 (E.D. Pa. Mar. 10, 2022) (Reid, MJ.); *High v. Kijakazi*, No. CV 20-3528, 2022 WL 394750, at *5–6 (E.D. Pa. Feb. 9, 2022) (Wells, MJ.); *Wicker v. Kijakazi*, No. CV 20-4771, 2022 WL 267896, at *8–10 (E.D. Pa. Jan. 28, 2022) (Heffley, MJ.).

### I. Ability to Interact and Relate with Others

In evaluating B.J.F.'s ability to interact and relate with others, the ALJ concluded, "In light of the behavioral improvement described in both the medical and educational evidence of record, the undersigned finds that the claimant's allegations of difficulties in this domain are only partially supported." R. 27. In reaching this conclusion, though, the ALJ did not clearly consider all material evidence.

As an initial matter, the Commissioner argues that the ALJ was not required to consider evidence which predates the SSI application date of January 10, 2019, and on the evidence as set forth following the application date, the decision is backed by substantial evidence. R. 18–20, 23. The Social Security regulations explicitly tell SSI claimants, however, that before determining one's disability status, "we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 416.912(b)(1). The ALJ should have considered evidence dating back at least to January 10, 2018 in evaluating B.J.F.'s claim.

Ultimately, I do not need to resolve whether the ALJ was permitted to exclude evidence predating B.J.F.'s SSI application date, because the ALJ nevertheless cited records from 2017 and 2018 in reaching several of his conclusions. *See, e.g.*, R. 25 (citing 2017 school records to show that B.J.F. "need no assistance in hygiene or clothing management"), 26 (citing records dating to 2017 in finding that B.J.F.'s engagement in various activities is one of his strengths). However, the ALJ inconsistently cited these records, omitting references to material elements of several older records. It is well-established that an ALJ may not "'cherry-pick' results that support his conclusion and ignore those that do not." *See Smith v. Berryhill*, No. 17-

9

2661, 2018 WL 7048069, at *9 (E.D. Pa. Nov. 27, 2018) (Hey, MJ) (collecting cases). The ALJ's inconsistent consideration of B.J.F.'s record in this domain and elsewhere in the decision warrants a remand.

An ALJ evaluating a child claimant's ability to interact and relate with others must consider the child's "ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others." SSR 09-5P, Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Interacting & Relating with Others", 2009 WL 396026, at *2 (Feb. 17, 2009). Examples of limitations in this domain include "difficulty cooperating with others," "difficulty playing games or sports with rules," and "difficulty communicating with others." *Id.* at *7.

In evaluating B.J.F.'s functioning in this domain, the ALJ cited a March 8, 2017 evaluation by the Reading School District to support his conclusion that "the allegations in this case of difficulty eating and bathing, suicidal thoughts, and nightmares are not corroborated in the record."[7] R. 26. The ALJ failed, however, to consider evidence in this same record which could support a finding that B.J.F. suffered a marked limitation in his ability to interact with and relate to others. For instance, this evaluation noted that B.J.F. "has a temper … and when he gets upset he is liable to bite!" R. 253. The evaluator also wrote that B.J.F. "struggles with group activity because he cannot read social cues; cannot read facial expression; body language, nor interpret tone of voice." R. 255. This evidence is cited nowhere in the ALJ's decision despite being material to analyzing B.J.F.'s ability to interact and relate with others. The ALJ cannot merely cite elements of

---

[7] The ALJ wrote that this report is dated April 2018. R. 26. However, his citation to the record here is to a March 2017 evaluation report. R. 267.

this complex record which support his conclusion while appearing to ignore material contradictory evidence. He must show that he considered the entire record.

The ALJ also cited 2017 records from KidsPeace in concluding that B.J.F.'s engagement in a variety of hobbies is one of his strengths. R. 26. However, the ALJ did not consider evidence from the same records indicating that, among other concerns, B.J.F. "is aggressive at home and school and the school representative said that that he often will lash out physically at his peers and staff for no reason." R. 461. That record also notes that Ms. Fermin-Castillo reported having to hide objects from B.J.F. in the house, and states that B.J.F. bit a peer at school "for no reported reason." *Id*. This evidence is facially material to evaluating B.J.F.'s ability to interact and relate with others, yet the ALJ ignored it while looking elsewhere in this same record to learn more about B.J.F.'s hobbies. This is erroneous.

Even if the ALJ only had to consider evidence dated on or after January 10, 2018, or even January 10, 2019, the ALJ's conclusions still fail to adequately consider contradictory evidence.  Most notably, the ALJ cited a February 1, 2019 behavioral health report by Paragon Behavioral Health Services in concluding that B.J.F. successfully engages in several hobbies. R. 26. What the ALJ did not do, however, is address the sections of the report finding that, while B.J.F.'s condition was improving, he still routinely bit and hit others and "pose[d] a moderate risk of harm to others due to aggression and history of causing injury, especially to his brother." R. 339–44. Once again, this is material evidence not clearly reflected in the ALJ's decision.

An ALJ may not "reject evidence for no reason or the wrong reason." *Mason*, 994 F.2d at 1066. The ALJ's failure to address material contradictory evidence here is clearly erroneous.

11

### II. Ability to Attend and Complete Tasks

As to his evaluation of B.J.F.'s ability to attend and complete tasks, the ALJ wrote "that the medical and other evidence of record warrants less than marked limitation in this domain." R. 27. Once again, though, the ALJ did not clearly consider all material evidence in making this finding.

The Social Security Administration, when determining whether a child has a limitation in the functioning area of attending and completing tasks, states:

> [W]e consider a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks. We consider the child's ability to initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distractions, and to perform tasks at an appropriate pace. We also consider the child's ability to change focus after completing a task and to avoid impulsive thinking and acting. Finally, we evaluate a child's ability to organize, plan ahead, prioritize competing tasks, and manage time.

SSR 09-4P, Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Attending & Completing Tasks", 2009 WL 396033, at *2 (Feb. 18, 2009). Examples of limitations in this domain include readily becoming sidetracked from activities; frequently interrupting others; requiring extra supervision to remain on task; and being unable to plan, manage time, or organize oneself to complete assignments. *Id*. at *5–6.

The ALJ selectively cited older record evidence in support of his conclusions but did not cite evidence from the same records which undermines his conclusions. Prominently, the ALJ cited the Reading School District's March 8, 2017 evaluation report elsewhere in the opinion, but appeared to ignore material evidence regarding this particular domain in that same record. For instance, the evaluation report states that "[w]hile [B.J.F.] is able to participate in desktop work, he can only remain attentive for 5

12

to 8 minute intervals with continuous cueing and redirection." R. 268. Furthermore, in an update to B.J.F.'s IEP on April 5, 2018, the evaluator noted that "[B.J.F.] requires support for self control and maintaining attention to task." R. 291. This evidence is clearly relevant for determining B.J.F.'s ability to attend and complete tasks. The ALJ also did not address evidence from the 2017 KidsPeace records showing that he tends to be unable to sit still or maintain focus in class, R. 468, despite citing these records to support conclusions concerning B.J.F.'s engagement in hobbies, R. 26. The ALJ erred by not addressing these notes in his opinion while addressing other aspects of these same records.

The ALJ also does not appear to have considered contradictory material evidence created following the SSI application date. Notably, the Paragon Behavior Health record dated February 1, 2019 explains that for B.J.F. "to do his homework he requires frequent redirections, prompts, breaks, and count downs throughout the entire evening." R. 340. This evidence is facially pertinent to B.J.F.'s ability to function in this domain. The ALJ must address this evidence on remand.

**B. The ALJ's conclusion that B.J.F.'s impairments do not medically equal the severity of a listing does not adequately grapple with contradictory evidence and is incapable of meaningful review.**

The ALJ concluded that B.J.F.'s severe impairments of autism spectrum disorder and ADHD do not medically equal the severity of the relevant listings, based on his evaluation of B.J.F.'s impairments under the "paragraph B" criteria. R. 22–23. Ms. Fermin-Castillo argues that the ALJ committed reversible error by finding that B.J.F.'s impairments caused a less-than-extreme limitation in his ability to adapt and manage himself, as he did not explain whether the impairment was marked, less than marked, or nonexistent, nor did he explain the evidentiary basis for his determination. Doc. No. 12,

13

at 16–20. The Commissioner responds that the relevant analysis of material evidence is appropriately provided later in the opinion, when the ALJ analyzes B.J.F.'s limitations in the functional equivalence domains. Doc. No. 13, at 25. While I agree that the ALJ just needs to ensure that material evidence is addressed and adequately considered somewhere in the opinion to permit proper judicial review, *see Jones*, 364 F.3d at 505, I nevertheless find that the ALJ's conclusions here are not capable of meaningful review.[8]

The paragraph B listing criteria of adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 112.00(E)(4). Examples of proper functioning in this category include "adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related activities; setting goals; making plans independently of others; [and] maintaining personal hygiene." *Id*.

The ALJ's conclusion that B.J.F. has a less-than-extreme limitation in his ability to care for himself, as addressed in his functional equivalence analysis, does not permit meaningful review. For instance, in reviewing a set of psychiatry notes from Lucille Venturanza, M.D., the ALJ found, per the record, that B.J.F. did not hit himself hard or "that often." R. 25. A child who willingly strikes himself does not seem to have the ability

---

[8] The Commissioner asserts that "there is significant overlap between the listing criteria of adapting and managing oneself and the functional equivalence domain of caring for oneself." I find I do not need to reach a conclusion on this issue. I will note that very few courts in this circuit have considered this issue, and there is no definitive resolution of this issue based on their reasoning. *See Grossnickle v. Kijakazi*, Civ. No. 1:20-CV-00375, 2021 WL 4478214, at *8 (M.D. Pa. Sept. 30, 2021) (finding overlapping factors between the listing criteria of adapting and managing oneself and the functional equivalence domain of caring for oneself); *but see G.M. o/b/o A.R. v. Comm'r of Soc. Sec.*, No. CV 21-1933 (SRC), 2022 WL 970329, at *6 (D.N.J. Mar. 31, 2022) (bypassing discussion of whether the listing criteria of adapting and managing oneself and the functional equivalence domain of caring for oneself are sufficiently similar to justify overlapping analysis). Whatever the overlap, the ALJ here did not adequately account for contradictory evidence.

to adapt and manage himself well. This is not behavior in which a child who has control over his emotions or physical well-being would engage. Exactly how often a normal child would be expected to hit himself, or how hard he would be expected to hit himself, is not apparent from the ALJ's opinion or the record. I rather doubt that a reliable medical source would be willing to brush off a child hitting himself, however "hard" or "often," as inconsequential. But the ALJ may address the record on remand.

Additionally, the ALJ cited these records for the finding that the only reason Ms. Fermin-Castillo had difficulty dressing B.J.F. was because he wanted to do things "his way." *Id*. A child may want to engage in many behaviors in his own way. It does not necessarily follow that the behavior itself is appropriate or indicates a proper ability to manage himself. And it certainly does not follow that a child who does things "his own way" can properly dress himself or maintain personal hygiene. This conclusion must be re-evaluated on remand.

The ALJ also cited B.J.F.'s 2017 KidsPeace records to show his ability to engage in a variety of activities. R. 26. However, the ALJ failed to cite relevant evidence in these records describing how B.J.F. purposefully placed a plastic bag over his head and brought his pencil very close to his face during his intake with the program. R. 456. This evidence appears to implicate B.J.F.'s ability to take care of his physical well-being. An ALJ cannot merely cite positive aspects of a report and skip over negative material aspects of a report in reaching his conclusions. This must be resolved on remand.

Lastly, the ALJ skips over a relevant portion of B.J.F.'s behavioral health analysis. B.J.F.'s February 1, 2019 report concluded that he had a poor functioning tolerance, a tendency to become overwhelmed with demands, and even posed a mild-to-moderate risk of harm to himself. R. 344. This record is again only cited to show B.J.F.'s

15

engagement in hobbies. R. 26. The contradictory evidence is clearly material to the listing criteria of adapting and managing oneself. The ALJ erred by failing to address and resolve it. This must be remedied on remand.

### C. I will remand B.J.F.'s claim to the Commissioner for further review.

Ms. Fermin-Castillo seeks an award of benefits should I find that the ALJ erred in denying B.J.F.'s SSI application. Reversal with direction to the Commissioner to award benefits is justified where there has been inordinate delay not attributable to the plaintiff, the existing record contains substantial evidence supporting a finding of disability, and it is unlikely that any additional material evidence will be unearthed on remand. *See Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (awarding benefits when delays were not attributable to the claimant, the record was unlikely to change, and substantial evidence established that claimant suffered from a severe mental disability). An award of benefits, rather than a remand for additional investigation or explanation, should be rare. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Where, as here, conflicting evidence has not been resolved, or the ALJ has not discussed all of the relevant evidence, remand is appropriate. *See Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001); *Leech v. Barnhart*, 111 F. App'x 652, 658–59 (3d Cir. 2004) (remand is appropriate where the ALJ "failed to make consistent findings and conclusions, but we are not prepared to hold that [claimant] necessarily is entitled to benefits…"). There remains conflicting substantial evidence which remains to be resolved in this matter. There has not been inordinate delay in this case. Lastly, since B.J.F. is a school-aged child, additional school and treatment records over the last two

years may be beneficial additions to the record. New records may assist the ALJ in determining the extent to which B.J.F.'s ADHD and autism spectrum disorder continue to limit him in the functional domains of interacting and relating with others and attending and completing tasks, as well as the paragraph B criteria of adapting or managing himself. If B.J.F.'s condition has improved or deteriorated since his last hearing, perhaps the proper outcome of this case will become clearer. In short, the record is "[]likely to change," on remand, unlike in *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (internal quotation and citation omitted), in which the court awarded benefits. I make no judgments as to the weight of the evidence on the record, but on remand, I instruct the ALJ to weigh all material evidence under the appropriate legal standards and to discuss and resolve evidence which contradicts his findings.

## CONCLUSION

For the reasons explained, Ms. Fermin-Castillo's request for review is granted, the final decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

BY THE COURT:


*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**